**2019-1871, -1873, -1875, -1876, -2224**

# United States Court of Appeals for the Federal Circuit

PFIZER INC.,

*Appellant*,

v.

SANOFI PASTEUR INC., SK CHEMICALS CO., LTD.,

*Appellees*

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

*Intervenor*.

*Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2017-02131, IPR2017-02132, IPR2017-02136, IPR2017-02138, and IPR2018-00187.*

## REPLY BRIEF FOR APPELLANT PFIZER INC.

Henry Huang
WHITE & CASE LLP
3000 El Camino Real
Two Palo Alto Square, Suite 900
Palo Alto, CA 94306
(650) 213-0300 (telephone)
henry.huang@whitecase.com

C. Sebastian Zonte
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433
(213) 620-7798 (telephone)
sebastian.zonte@whitecase.com

John Scheibeler
Dimitrios T. Drivas
Amit Thakore
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200 (telephone)
jscheibeler@whitecase.com
athakore@whitecase.com

*Counsel for Appellant Pfizer Inc.*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

GLOSSARY OF ABBREVIATIONS ........ iv

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. THE BOARD'S FINDING THAT CLAIM 1 IS OBVIOUS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ........ 3

A. Molecular Weight was not a Result-Effective Variable for 22F Conjugates, and not Subject to Routine Optimization ........ 4

1. The Expert Testimony Does not Support the Board's Decisions ........ 4

2. The Prior Art Does not Support the Board's Findings about Optimization ........ 7

3. There was no Reasonable Expectation of Success or Motivation to Combine Regarding Molecular Weight ........ 9

B. Sanofi and the PTO's Attempts to Find the Claimed Molecular Weights in the Prior Art are Misplaced ........ 12

1. Pfizer 2012 ........ 12

2. GSK-711 ........ 14

C. Sanofi Misconstrues the Record and Pfizer's Positions ........ 17

II. THE BOARD'S FINDING THAT CLAIMS 3 AND 4 ARE OBVIOUS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ........ 19

III. THE BOARD'S DENIAL OF PFIZER'S CONTINGENT MOTION TO AMEND WAS AN ABUSE OF DISCRETION. ........ 23

IV. THE PTO'S DIRECTOR REVIEW PROCEDURE WAS IMPROPER ........ 29

CONCLUSION ........ 30

CERTIFICATE OF COMPLIANCE ........ 32

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Almirall, LLC v. Amneal Pharms. LLC*,
28 F.4th 265, 273 (Fed. Cir. 2022) ....................19

*Am. Nat'l Mfg. Inc. v. Sleep No. Corp.*,
52 F.4th 1371 (Fed. Cir. 2022) ....................22

*Appalachian Power Co. v. E.P.A.*,
208 F.3d 1015 (D.C. Cir. 2000) ....................29

*In re Applied Materials, Inc.*,
692 F.3d 1289, (Fed. Cir. 2012) ....................4, 10, 11

*Bosch Auto Serv. Sols., LLC v. Matal*,
878 F.3d 1027 (Fed. Cir. 2017) ....................23

*E.I. DuPont de Nemours & Co. v. Synvina C.V.*,
904 F.3d 996 (Fed. Cir. 2018) ....................10, 11

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ....................17

*Genentech, Inc. v. Hospira, Inc.*,
946 F.3d 1333 (Fed. Cir. 2020) ....................11

*Mylan Pharms. Inc. v. Merck Sharp & Dohme Corp.*,
50 F.4th 147 (Fed. Cir. 2022) ....................5

*OSI Pharm., LLC v. Apotex Inc.*,
939 F.3d 1375 (Fed. Cir. 2019) ....................20

*Otsuka Pharm. Co., v. Sandoz, Inc.*,
678 F.3d 1280 (Fed. Cir. 2012) ....................5

*Sandt Tech. v. Resco Metal & Plastics Corp.*,
264 F.3d 1344 (Fed. Cir. 2001) ....................13

*Univ. of Strathclyde v. Clear-Vu Lighting LLC*,
17 F.4th 155 (Fed. Cir. 2021) ....................5, 6, 25, 27

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| ’559 Patent | U.S. Patent No. 9,492,559 (Appx845-934) |
| Pfizer | Appellant Pfizer Inc. |
| Merck | Merck Sharp & Dohme Corp. |
| Sanofi | Sanofi Pasteur Inc. and SK Chemicals Co., Ltd. |
| Board (or PTAB) | Patent Trial and Appeal Board |
| IPR | *inter partes* review |
| Merck Proceedings | IPR2017-02131, IPR2017-02132, IPR2017-02136, and IPR2017-02138 |
| Sanofi Proceeding | IPR2018-00187 |
| Merck 2011 | WO2011/100151, published August 18, 2011 (Appx1732-1768) |
| GSK 2008 | WO2009/00825, published December 31, 2008 (Appx1769-1892) |
| Pfizer 2012 | Brown et al., *Characterization of Complex Prophylactic Vaccines with Protein and Glycoconjugate Components*, 9th CASSS Symposium (Sep. 12, 2012) (Appx1893-1926) |
| GSK-711 | WO2007/071711, published June 28, 2007 (Appx4572-4666) |
| Merck-086 | US2011/0195086, published August 11, 2011 (Appx4667-4683) |
| Hausdorff | US2012/0237542, published September 20, 2012 (Appx4522-4543) |
| POSITA (or skilled artisan) | person of ordinary skill in the art |
| Br. | Brief for Appellant Pfizer Inc. (ECF No. 99) |

| | |
|---|---|
| Sanofi Br. | Brief for Appellees (ECF No. 108) |
| PTO Br. | Corrected Brief for Director of the United States Patent and Trademark Office (ECF No. 111) |

## INTRODUCTION

The Board relied on a "result-effective variable" argument that was not the basis for any of the IPR petitions to find claim 1 obvious. The evidence shows no basis for optimizing conjugate molecular weight or considering it a result-effective variable for serotype 22F conjugates. Sanofi, the PTO, and the Board ignore evidence demonstrating that conjugate vaccine creation was unpredictable, and that an immunogenic 22F conjugate within the claimed molecular weight and conjugation ratio ranges could not be achieved through routine optimization. Only with hindsight knowledge of claim 1's molecular weight and conjugation ratio ranges would a skilled artisan attempt to create conjugates of that size.

The Board's finding of obviousness for claims 3 and 4 is not supported by substantial evidence. Sanofi and the PTO simply point to the same deficient evidence relied on by the Board for the erroneous finding that a skilled artisan would have been motivated to make the conjugates recited in these claims with a reasonable expectation of success because the recited serotypes (15B, 12F, 10A, 11A, and 8) were used in free polysaccharide vaccines in the prior art. The prior art does not disclose immunogenic compositions comprising the conjugated serotypes 15B, 12F, 10A, 11A, and 8 recited in claims 3 and 4. The Board relies primarily on the prior art's disclosure of these serotypes in the unconjugated vaccine called Pneumovax®23. The Board also incorrectly infers from a few immunogenic

conjugate compositions made and tested in GSK-711 that all possible compositions of conjugates for the serotypes enumerated in GSK-711 could be prepared and would necessarily be immunogenic. The expert testimony the Board cites fails to establish a reasonable expectation of success for preparing immunogenic compositions with the conjugates for all serotypes in Pneumovax®23, including the serotypes required by claims 3 and 4.

The Board's ruling on Pfizer's contingent motion to amend must also be reversed as an abuse of discretion. Sanofi and the PTO do not dispute that the prior art unequivocally shows that when others attempted to make the claimed formulation, they failed to achieve the 2-log increase in IgG serum levels across all serotypes in the composition as required by the claims. Rarely is there such direct evidence in the record establishing nonobviousness. In an effort to overcome these facts, Sanofi and the PTO merely repeat the Board's conclusory argument that "obviousness does not require absolute predictability of success." Failure does not predict success. The undisputed evidence leads only to one conclusion—*no* reasonable expectation of success in achieving the claimed invention. The Board's ruling here cannot stand.

# ARGUMENT

## I. THE BOARD'S FINDING THAT CLAIM 1 IS OBVIOUS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The molecular weight limitation of "1,000-12,500 kDa" in claim 1 does not appear in the prior art, and would not have been obvious through routine optimization or as a result-effective variable. The assertions by Sanofi and the PTO that substantial evidence supports the Board's decisions rely on erroneous characterizations of the record. When viewed in full, the record provides insufficient evidence to conclude that a skilled artisan would have been motivated to use the claimed molecular weight range for a serotype 22F conjugate. The evidence also does not establish obviousness of a 22F conjugate with both the claimed molecular weight and claimed conjugation ratios. The record demonstrates that vaccine development was unpredictable and a skilled artisan would not have a reasonable expectation of success developing an immunogenic 22F conjugate as recited in the claim.[1]

---

[1] The PTO does not challenge any Board decisions in the Merck proceedings other than IPR2017-02132, stating incorrectly that -2132 is the only Merck IPR that addresses claims 1, 3, 4, and 46-52. *See* PTO Br. at 5. In fact, IPR2017-02131 addresses the same claims. *See* PTO Br. at 10. Accordingly, Pfizer's arguments with respect to IPR2017-02131 are unopposed.

### A. Molecular Weight was not a Result-Effective Variable for 22F Conjugates, and not Subject to Routine Optimization

At the time of the ’559 Patent’s invention, there was no known relationship between molecular weight and immunogenicity, so the result-effective variable doctrine cannot apply. *Applied Materials*, 692 F.3d at 1295. Sanofi contends the Board’s finding that molecular weight was a result-effective variable makes claim 1 “presumptively obvious” (Sanofi Br. at 19). That position is unsupported. The Board applied no such “presumption” based on its findings. Even if the result-effective variable doctrine did apply in this case, the evidence shows that it would not have been obvious to optimize molecular weight to obtain immunogenic conjugates, and that there was no reasonable expectation of success in achieving the claimed range.

#### 1. The Expert Testimony Does not Support the Board’s Decisions

The Board’s conclusions about routine optimization are unsupported by the prior art or expert testimony. Sanofi and the PTO claim the experts testified that there was a known relationship between molecular weight and immunogenicity, and that it would have been obvious to optimize conjugate size. *See* Sanofi Br. at 33-37; PTO Br. at 30-31. Those assertions are incorrect. In fact, the experts agreed that determining optimum molecular weight for a given conjugate requires case-by-case experimentation. Appx5468-5470; Appx4130-4131 (27:24-28:7). An unpredictable

field (such as vaccine development) that requires "trial and error" undermines the Board's optimization theory and indicates nonobviousness.[2] *Mylan Pharms. Inc. v. Merck Sharp & Dohme Corp.*, 50 F.4th 147, 154 (Fed. Cir. 2022).

Sanofi and the PTO rely improperly on expert statements about the '559 Patent itself, not the prior art, to reach these conclusions. The "inventor's own path itself never leads to a conclusion of obviousness; that is hindsight." *Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 165 (Fed. Cir. 2021) (quoting *Otsuka Pharm. Co., v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012)). Sanofi argues that Pfizer's expert Dr. Wang admitted the importance of molecular weight was previously known. Sanofi Br. at 34. However, Dr. Wang's cited testimony concerned the invention's *patented range* of 1,000-12,500 kDa, not the prior art. Appx30282-30283. Dr. Wang also explained that weight and multiple other factors were "very serotype specific." Appx30283-30284.

Similarly, the PTO asserts that Pfizer's expert Dr. Boons admitted the known importance of conjugate molecular weight. PTO Br. at 30. But Dr. Boons' cited deposition testimony was that multiple factors affect immunogenicity, and they "need to be experimentally determined, because *no one knows what they need to be*

---

[2] The PTO's claim that unpredictability in the art does not defeat a reasonable expectation of success (PTO Br. at 37, 41) contradicts established law. There is no basis for a panel of this Court to overrule that law. The PTO otherwise fails to dispute that the relevant field was unpredictable.

to get an immunogenic composition." Appx6468 (emphasis added). Therefore, Dr. Boons said precisely the opposite. *See Univ. of Strathclyde*, 17 F.4th at 164 (reversing obviousness where "the Board's stated reason for discrediting this written testimony is unsupported by the record before us"). Sanofi makes a similar argument, but cites Dr. Boons' testimony about Table 16 of the '559 Patent, not the state of the prior art. *See* Sanofi Br. at 34. Again, the full context of Dr. Boons' cited testimony confirms that "[n]o one knows what those parameters need to be." Appx6485.

The PTO then insists that Pfizer's expert Dr. Paradiso conceded the relevance of molecular weight. PTO Br. at 30-31. Once again, the expert was discussing Table 16 of the '559 Patent instead of the prior art. He explained that the challenged patent showed how molecular weight and other parameters could be varied. *See* Appx6155-6156. Accordingly, Dr. Paradiso discussed how the inventors discovered and disclosed the role of conjugate size. The PTO's reliance on this testimony is misplaced and illustrates its hindsight-driven analysis.

Sanofi's reliance on testimony from its expert Dr. Lees that small conjugates "are difficult to separate from unconjugated free polysaccharides," and that "unconjugated polysaccharides may also inhibit the immune response" is misplaced. Sanofi Br. at 34-35 (quoting Appx24951-24954). At most, Dr. Lees indicates that limiting unconjugated free polysaccharides in a conjugate vaccine could have some

benefits, but he does not discuss molecular weight of serotype conjugates or its relationship to the claimed inventions.

### 2. The Prior Art Does not Support the Board's Findings about Optimization

Both Sanofi and the PTO rely on the prior art's discussion of column filtration in support of obviousness. *See* Sanofi Br. at 36-37; PTO Br. at 31-32. Overwhelming evidence—including Dr. Lees' testimony—shows that filtration size limits were not precise or reliable predictors of conjugate molecular weight, much less immunogenicity for specific serotypes.

The PTO argues that Merck 2011's filtration techniques "exemplify the artisan's ability to optimize glycoconjugate size (i.e., molecular weight)." PTO Br. at 31. However, the PTO points only to Merck 2011's disclosure of a "0.2 µm membrane filtration," a standard sterilization technique. *Id.* (quoting Appx1749). Merck 2011 does not establish that molecular weight had a known or predictable relationship with filter size. Moreover, Merck 2011's reference to the saccharide being "sized to a target molecular mass" is a step that occurs *before* conjugation and filtration. Appx1749 ("The purified CRM197 is *then* conjugated . . . ." (emphasis added)).

Sanofi's contentions about filtration also lack substantial evidence. Sanofi relies on generic statements in the prior art and by experts about the value of ensuring that conjugates were not too small or too big. *See* Sanofi Br. at 27-28 (quoting

Appx288). Sanofi points to GSK-711's recitation of "0.2 micron filter" to argue that the record shows molecular weight affects filtration and purification. *Id.* at 36-37 (citing Appx25016). However, those statements cannot establish a reasonable expectation of success for *the claimed range* specifically. Dr. Wang explained that the *ability* to separate conjugates from impurities is not the same as predicting molecular weights: "the ability to purify a glycoconjugate away from contaminants using an SEC column is unrelated to the ability of a POSA to accurately predict the molecular weight of a glycoconjugate using that same column." Appx29454-29455. GSK-711 itself teaches purifying a conjugate using a Sephacryl S400HR column, but with the resulting conjugate larger than the column's exclusion limit, showing that filter size does not reliably predict conjugate weight. *See id.*

Similarly, Sanofi's arguments about conjugation chemistry do not support the Board's conclusions. *Cf.* Sanofi Br. at 28-29. The prior art warns there was a known risk of conjugate fragmentation from CDAP chemistry, and Dr. Lees conceded that he "can't address" whether certain chemical conditions could cause fragmentation. Appx29257. There were also many differences in conjugation chemistry for different serotypes, and for different immunogenic carrier proteins. Appx5468-5471; Appx4130-4131 (27:24-28:7); Appx2515-2516. Pfizer also explained how Merck's secondary references of Jones 2005, Wyeth 2007, and Lees 2008 did not discuss 22F, disclosed different weight ranges, and showed that many factors affect

conjugate size. *See* Br. at 37-38 (citing Appx5482-5484). The PTO, Sanofi, and the Board never address this evidence indicating that optimization would not have been routine.

The remaining arguments regarding the prior art fare no better. Sanofi points to the Board's reliance on GSK-711's statements about desirability of larger conjugate sizes. *See* Sanofi Br. at 35. However, the Board's citations of GSK-711 note potential benefits of "a larger size of saccharide," not conjugate, much less 22F. *See id.* (quoting Appx294). Sanofi claims a larger saccharide necessarily means a larger conjugate, but that postulate still provides no motivation for choosing claim 1's molecular weight range of 1,000-12,500 kDa for serotype 22F. In reality, there is no evidence that final weight for a 22F conjugate would result in improved stability or immune response.

### 3. There was no Reasonable Expectation of Success or Motivation to Combine Regarding Molecular Weight

With no overlap in molecular weight ranges, and therefore no presumption of obviousness, there is insufficient evidence that a skilled artisan would have optimized conjugate size to arrive at claim 1. The PTO argues that even without overlapping ranges, claim 1 would have been obvious, but fails to identify substantial evidence in support of that conclusion. *See* PTO Br. at 32-34. For reasonable expectation of success, the PTO points only to two quotes from Merck 2011 about "sizing" conjugates and Dr. Boons' testimony. *Id.* at 42-43. Those

quotes refer to reducing viscosity and improving filterability, not immunogenicity. Appx1737 ("sized in order to reduce viscosity . . . and/or to improve filterability"). The PTO omits the full context of the testimony from Dr. Boons, who explained that no one could predict immunogenicity from the claimed ranges. Appx6490.

Sanofi's legal arguments about reasonable expectation of success and result-effective variables are also flawed. As noted above, a variable cannot be result-effective unless there is a known relationship between the variable and a relevant result. *See Applied Materials*, 692 F.3d at 1295. Despite this established legal principle, Sanofi argues that a variable need only "affect" a result, and not "predictably," to be result-effective. Sanofi Br. at 38. This position is unsupported. The law requires contemporaneous recognition of a relationship between a parameter and a desired outcome for the doctrine to apply. *See E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1009 (Fed. Cir. 2018) (noting references "disclosed appropriate or preferred temperatures and air pressures for the reaction," and effects were "known at the time of invention"). Here, the Board relied expressly on immunogenicity as the desired result to conclude: "conjugate size is a results-effective variable associated with improved stability of conjugates and good immune response, limited only by filter size." Appx108. The law does not hold that any effect on any result, however irrelevant, supports obviousness. To the contrary, in each of the cases cited by Sanofi, the Court identified relevant results and known

relationships with the variables in question. *See Applied Materials*, 692 F.3d at 1297 ("the dimensions could be modified and that modification would affect pad performance"); *E.I. DuPont*, 904 F.3d at 1009 ("the evidence in this case supports the unremarkable fact that an oxidation reaction is affected by temperature and PO2"); *Genentech, Inc. v. Hospira, Inc.*, 946 F.3d 1333, 1341 (Fed. Cir. 2020) ("a skilled artisan would have expected that lowering temperature would reduce proteolysis of matrix-bound protein A, and consequently, would reduce protein A leaching").

The result-effective variable doctrine relied on by the Board never appeared in the Petitions. Sanofi claims it proposed this doctrine to the Board, but its cited arguments (*see* Sanofi Br. at 30-31, citing Appx30481, Appx31746-31747, Appx31754) do not refer to "result-effective variable." The Board further based its result-effective variable analysis on an incorrect interpretation of the prior art and expert testimony to determine that molecular weight would have been routinely optimized.

Compounding its error, the Board failed to consider claim 1 as a whole, including both the claimed molecular weight range and ratio of polysaccharide to carrier protein in the conjugate. Sanofi contends otherwise, but cites only portions of the Board's decisions and record that refer to each numerical range in isolation,

underscoring this flaw in the Board's reasoning. *See* Sanofi Br. at 45-46. The Court should reverse the Board's conclusion.

### B. Sanofi and the PTO's Attempts to Find the Claimed Molecular Weights in the Prior Art are Misplaced

No reference in any IPR proceeding below teaches claim 1's molecular weight range of 1,000-12,500 kDa for a serotype 22F conjugate.[3] Sanofi's expert Dr. Lees acknowledges this gap in GSK-711. Appx287 ("molecular weights are not explicitly provided"). Sanofi admits that GSK-711 and Merck-086 "do not expressly disclose that the 22F conjugate falls below the 12,500 kDa upper limit of the claimed molecular weight range." Sanofi Br. at 26. The PTO also agrees that Merck 2011 lacks "express disclosure of the recited molecular weight range." PTO Br. at 20-21. To overcome this deficiency, Sanofi and the PTO rely on inferences and calculations that are based on incorrect assumptions and are unsupported by substantial evidence.

#### 1. Pfizer 2012

The PTO relied on a reference (Pfizer 2012) that never mentions 22F or any pneumococcal vaccine. It relied on Pfizer 2012's disclosure of "500-5,000 kDa" as the "typical mass" of a conjugate. The PTO concedes "it is true that Pfizer 2012 does not expressly disclose vaccines containing pneumococcal conjugates or those

---

[3] As noted in Pfizer's opening brief, Merck 2011 and Merck-086 are substantively the same reference, as are GSK 2008 and GSK-711. Neither Sanofi nor the PTO disputes this.

specifically including the 22F serotype" (PTO Br. at 22), but insists that the Board "reasonably found" a skilled artisan would have expected to achieve an immunogenic 22F conjugate within that weight range (*id.* at 34). The evidence contradicts this position. Pfizer 2012 discusses SEC/MALLs chromatography, but does not disclose individual components for conjugates or serotypes, certainly not 22F. Appx5478-5479 (¶ 68); Appx12408 (¶ 38). The 500-5,000 kDa range in Pfizer 2012 is not specific to any serotype, much less 22F, as claim 1 requires. *See* Br. at 28-29. There is no evidence to support the conclusion that a general disclosure of molecular weight could reasonably lead to the specific 22F conjugate of claim 1. Accordingly, the PTO's (and Board's) use of Pfizer 2012 lacks sufficient evidentiary basis.

The PTO also suggests incorrectly that *Pfizer* needed to prove "artisans would not have considered Pfizer 2012's general disclosures about glycoconjugates." PTO Br. at 23. This assertion is unsupported and improperly shifts the burden to Pfizer to show nonobviousness. *See Sandt Tech. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (stating that the challenger always bears the burden "on all issues relating to the status of a particular reference as prior art"). Here, the record shows that Pfizer 2012 lacks any disclosure that would have motivated a skilled artisan to arrive at a molecular weight for a 22F conjugate within the claimed range of 1,000-12,500 kDa. Petitioners failed to show that a skilled artisan would have

combined Merck 2011 and Pfizer 2012 with a reasonable expectation of success constructing an immunogenic 22F conjugate in the molecular weight range recited in claim 1.

**2. GSK-711**

Sanofi's assertion that the Board's determination should be upheld because GSK-711 "implicit[ly]" discloses the claimed molecular weight range is unavailing. Sanofi Br. at 26-27, 40-41. GSK-711 does not provide the final molecular weight for either 22F conjugate disclosed therein. *See* Br. at 15. Table 2 in GSK-711 shows only "*not done*" for the weights of those conjugates. Appx25056-25058; Appx5472-5474.

Sanofi states the Board found "every element of Claim 1 except a 22F conjugate with a molecular weight below 12,500 kDa" in the prior art (Sanofi Br. at 18), implying that the Board also found claim 1's lower limit of 1,000 kDa in the art. This is incorrect. For the lower limit, Sanofi cites patent claims 55, 56, and 61 in GSK-711, but those claims do not disclose the relevant conjugate weights. *Id.* at 40-41. Claim 55 recites "average size . . . of the *22F saccharide* is above 100 kDa," not the weight of the *conjugate*, which includes protein carrier molecules. Appx25084. Likewise, claims 56 and 61 list weight ranges for "saccharides." Appx25084-25085. Claim 55's "above 100 kDa" is a boundless range that provides no direction on the weight of an immunogenic conjugate, particularly in light of the fact that molecular

weight was "not done" for any 22F conjugates in GSK-711. Sanofi argues that "[i]f the molecular weight of the 22F saccharide is above 1000 kDa . . . , then the 22F saccharide conjugated to a carrier protein will necessarily be greater than 1000 kDa." Sanofi Br. at 26 n.4. However, Sanofi cites no part of the Board's decision that relies on this assumption, and provides no basis for assuming that the final conjugate weight falls within the claimed 1,000-12,500 kDa range.

Sanofi also erroneously asserts that obviousness is presumed because GSK-711's "other pneumococcal conjugates" (besides 22F) are "structurally and functionally similar." Sanofi Br. at 41. The Board did not rely on this reasoning for obviousness. In addition, in the context of larger complex biologic vaccines with multiple serotypes conjugated to proteins, the evidence shows a skilled artisan would determine optimum molecular weight for each serotype case-by-case through experimentation, not by reference to other serotype conjugates. Appx5468; Appx4130-4131 (27:24-28:7). Sanofi points to no evidence that the serotypes are "structurally and functionally similar," other than being "purified using the same size exclusion column." Sanofi Br. at 41.

Sanofi also fails to address the flaws in its expert Dr. Lees' calculations about undisclosed molecular weights in GSK-711, which form the premise for its argument that the 22F conjugates "would have fallen within the range recited in Claim 1." *Id.* at 42. Pfizer explained why those calculations are flawed and fail to show the actual

weights of the 22F conjugates. *See* Br. at 31-32. In response, Sanofi dismisses its own math as "a sideshow" and claims the Board's analysis does not turn on those computations. Sanofi Br. at 43. But the Board credited and relied on Dr. Lees' opinions to arrive at obviousness. *See* Appx304-305. Sanofi's attempt to downplay its own experts' erroneous calculations and the Board's reliance on such evidence should not stand.

The Board improperly ignored evidence that undermines those calculations:

- Dr. Lees assumed incorrectly that each conjugate would have two saccharide molecules, but GSK-711's activation and conjugation methods show that the 22F conjugates had a single saccharide. Br. at 32 (citing Appx29457-29458; Appx28993). The Board did not address this deficiency, but simply quoted Dr. Lees' statements about *other* serotypes. Appx304-305.
- Pfizer's expert Dr. Wang showed that Sanofi's math overestimated the weight range when applied to other serotypes. Br. at 32 (citing Appx29459-29460). Again, the Board circumvented this evidence by citing Dr. Lees. Appx304-305.
- Pfizer showed that a skilled artisan would expect fragmentation to reduce polysaccharide size when conjugated. Appx29458. Sanofi asserts Dr. Lees' testimony about not expecting fragmentation in "all serotypes" supports the

Board's view (Sanofi Br. at 44), but the Board did not rely on that testimony or address "fragmentation" at all.

Substantial evidence does not support the outcome because the Board ignored contrary facts. *See In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (noting "'substantial evidence' review involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision").

### C. Sanofi Misconstrues the Record and Pfizer's Positions

As explained above, in finding claim 1 unpatentable, the Board relied improperly on the result-effective variable doctrine and a flawed analysis of routine optimization of molecular weight of the claimed conjugate. Sanofi's brief incorrectly contends that the Board cited two independent bases for its obviousness finding and that Pfizer failed to challenge one of these bases. *See* Sanofi Br. at 18-19, 22-23, 29. In particular, Sanofi argues that the Board's obviousness finding is based on (1) a skilled artisan would have been motivated with a reasonable expectation of success to arrive at the claimed invention, and (2) the claimed molecular weight of a 22F conjugate is a result-effective variable that makes claim 1 "presumptively obvious." *Id.* Sanofi argues that Pfizer addresses only point (2), and the failure to address point (1) is fatal to the appeal. *Id.* Sanofi is wrong.

The Board did not present two independent bases for obviousness of claim 1 as Sanofi alleges. The Board's entire obviousness analysis was premised on its

(erroneous) finding that conjugate molecular weight is a result-effective variable that could be optimized. While the Board adopted Petitioner's description of the art (*see* Appx286-289 (IPR2018-00187); Appx97-99 (IPR2017-02132)), stating "Petitioner has accurately described the above stated teachings of GSK-711 and Merck-086, which we adopt as our own" (Appx289), it did not make any conclusions about obviousness in the pages Sanofi identifies (Appx286-289).

The Board found that "optimization of polysaccharide conjugate size was well known to the person of ordinary skill in the art" (Appx297), that "the factors necessary to obtain particular glycoconjugates are results optimizable variables" (Appx298), and that "conjugate size is a results effective variable" (Appx300). *See also* Appx107, Appx112, Appx108 (same statements for IPR2017-02132). Indeed, the PTO's brief acknowledges these rulings are interrelated: "Based on these admissions and the teachings in the prior art, the Board found that 'conjugate size is a results-effective variable . . . .'" PTO Br. at 16. Accordingly, there is no independent basis for obviousness that Pfizer failed to address in its brief.

In any event, contrary to Sanofi's suggestion, Pfizer has consistently and repeatedly challenged motivation to combine the prior art and reasonable expectation of success in optimizing molecular weight, together with the Board's misapplication of the result-effective variable doctrine. Pfizer repeatedly emphasized that the evidence showed conjugation chemistries and conditions are

specific to each serotype polysaccharide and require case-by-case determination. The outcome of conjugation cannot be predicted from one serotype to another. *See* Br. at 36 ("arriving at the claimed ranges would have been unpredictable, not a matter of routine optimization"). Sanofi's reliance on *Almirall, LLC v. Amneal Pharmaceuticals LLC* is misplaced; the Court there held the "outcome would be the same" regardless of whether the art disclosed overlapping ranges, without addressing waiver or the result-effective variable rule. 28 F.4th 265, 273 (Fed. Cir. 2022). *Almirall* held that the presumption of obviousness applied based on disclosure of claimed ranges, but also affirmed obviousness based on substitution of known elements: "It is simply a case of substituting one known gelling agent for another." *Id.* That is not the case with the serotypes here.

## II. THE BOARD'S FINDING THAT CLAIMS 3 AND 4 ARE OBVIOUS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

GSK-711, Merck-086, or PVP 2013 do not disclose the generation of immunogenic (*i.e.*, eliciting functional antibody (Appx10; Appx280)) conjugates for the serotypes in claims 3 and 4 (namely, serotypes 15B, 12F, 10A, 11A, and 8). Sanofi plainly mischaracterizes the record because there is no disclosure of the claimed immunogenic conjugates at the pages from GSK-711 and Merck-086 cited in Sanofi's brief. Sanofi Br. at 50 (citing Appx25010, Appx25102 and Appx24961-24962). In fact, there is no disclosure that these conjugates were made or that compositions containing these conjugates were tested and shown to be

immunogenic. All that Sanofi points to is the list of Pneumovax®23 serotypes. That disclosure alone cannot support a finding of obviousness of the immunogenic composition of claims 3 and 4.

It is true that immunogenic conjugate compositions with ***some*** of the serotypes in Pneumovax®23 had been made. That fact, however, does not support an inference of reasonable expectation of success for making immunogenic compositions comprising ***any combination of the*** serotypes in Pneumovax®23. *See OSI Pharm., LLC v. Apotex Inc.*, 939 F.3d 1375, 1384 (Fed. Cir. 2019) (reversing obviousness where prior art disclosed "good anticancer activity in some cancers, *not* including [the targeted cancer]"). Sanofi cites to Table 2 in GSK-711 and Tables 3 and 4 in Merck-086 as evidence of "new" immunogenic conjugates. Sanofi Br. at 50. Tellingly, these tables do not include the conjugates recited in claims 3 and 4. Moreover, the expert testimony the Board relied on does not remedy the lack of evidence or teachings in the prior art for preparing immunogenic conjugates of the serotypes recited in the claims. Merck's expert Dr. Kasper and Sanofi's expert Dr. Lees rely only on the deficient disclosures in GSK-711 and Merck-086. Other references highlight the unpredictability of obtaining immunogenic conjugates with new serotypes. For example, Lees 2008 teaches that multivalent pneumococcal conjugate compositions "present additional complexities" due to each serotype being chemically distinct, requiring optimization of each conjugate within the

compositions. Appx5502, Appx12446, Appx29474. It is not enough that compositions with the conjugates of claims 3 and 4 were desirable, as the PTO states.

The Board's discussion of GSK-711 fails to address whether the compositions it discloses do in fact "elicit functional antibody." Appx48, Appx127, Appx318. The Board stated that that "there would be no need to include a serotype unable to induce" an immune response in the compositions in GSK-711. Appx318. Without any evidence, the Board incorrectly assumed that the conjugates of all serotypes disclosed in GSK-711 and all possible compositions containing these conjugates are necessarily immunogenic. There is no evidence that all the possible compositions of conjugates for the serotypes enumerated in GSK-711 were ever prepared or shown to elicit functional antibody, and neither Sanofi nor the PTO argues to the contrary on appeal. Indeed, at his deposition, Dr. Kasper stated that he could not predict whether a composition containing 22F, 33F, and 15B conjugates (claim 3) would elicit functional antibody. Appx4145-4146 (42:7-43:18). In sum, there is no evidence of any multivalent immunogenic compositions including the serotypes recited in claims 3 and 4, let alone for the specific three-valent and five-valent compositions required by these claims.

The record shows that the prior art fails to teach or suggest the immunogenic compositions in claims 3 and 4. GSK-711 and Merck-086 provided insufficient

evidence that the claimed immunogenic conjugates could be obtained. The Court should reverse the Board's determination that claims 3 and 4 are unpatentable.

Both the Sanofi and the PTO strain to explain away the Board's clear statements improperly shifting the burden to Pfizer to prove that the claims at issue are "unobvious." Sanofi points out to the Board's general recitation of the correct standard in some parts of the decision. Sanofi Br. at 52 (citing Appx282, Appx330). That does not change the fact that the Board explicitly concluded that Pfizer failed to prove that the claims were "unobvious" over the prior art. Appx48, Appx292, Appx318. The PTO does not dispute that Board shifted the burden to Pfizer, but instead argues that burden-shifting is permissible under this Court's precedent. PTO Br. at 49 (citing *Am. Nat'l Mfg. Inc. v. Sleep No. Corp.*, 52 F.4th 1371, 1385 (Fed. Cir. 2022)). The PTO mischaracterizes this Court's reasoning in *American National*. Instead of endorsing burden-shifting, the Court concluded that after "reading the [Board's] decisions as a whole," the Board properly allocated the burden. *Id.* That is not the case here. In addition, In *American National*, the Board made statements that it was not persuaded as to certain facts underlying the patent owner's analysis. *Id.* Here, by contrast, the Board's statements do not concern any particular fact alleged by Pfizer. Instead, the Board concluded that Pfizer did not persuade the claims were unobvious.

## III. THE BOARD'S DENIAL OF PFIZER'S CONTINGENT MOTION TO AMEND WAS AN ABUSE OF DISCRETION.

The evidence of record and arguments on appeal confirm that Pfizer's proposed substitute claims are patentable and that the Board's denial of Pfizer's motion to amend was an abuse of discretion that must be reversed or at minimum vacated.[4] *Bosch Auto Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1039 (Fed. Cir. 2017).

The substitute claims recite an immunogenic composition comprising the 22F conjugate recited in original claim 1 plus an additional 13 serotypes (1, 3, 4, 5, 6A, 6B, 7F, 9V, 14, 18C, 19A, 19F, and 23F) individually conjugated to $CRM_{197}$, and an aluminum adjuvant, wherein the composition exhibits more than a 2-log increase above baseline in serum IgG levels in New Zealand White Rabbits across all serotypes in the composition following administration of two equal doses of the composition in the form of an initial dose and a booster dose. The claim therefore requires at least a 14-valent conjugate composition that achieves the recited 2-log increase across *all* 14 serotypes. On appeal, neither Sanofi nor the PTO addresses the evidence in Merck 2011 showing that the claimed 2-log increase above baseline was <u>not</u> achieved in the prior art and would <u>not</u> have been obvious. Appx6944. As

---

[4] Neither Sanofi nor the PTO have challenged the Board's determination that the proposed substitute claims have written description support and are enabled. Any arguments to the contrary are therefore waived on appeal.

Pfizer argued in its opening brief, Table 4 of Merck 2011 demonstrates that Merck's 15-valent conjugate vaccine formulation (PCV-15) failed to achieve a 2-log increase across all serotypes in the composition. In two of the four study arms ("NZWR-1" and "NZWR-2"), none of the serotypes shown in the table achieved a 2-log increase in IgG response. In the remaining two study arms ("NZWR-3"and "NZWR-4"), a 2-log increase was not achieved for serotypes 1 and 3. These undisputed facts negate any reasonable expectation of success that Hausdorff combined with Merck 2011 would achieve the claimed invention.

Sanofi largely ignores Table 4 of Merck-086 and focuses instead on immunogenicity data for the 13-valent vaccine in Hausdorff (PCV-13), arguing that Hausdorff and Merck-086 disclose all the elements of claim 46. Sanofi Br. 59. However, the disclosure of a 2-log increase for a *13*-valent composition in Hausdorff combined with a 2-log increase for serotype 22F in Merck-086 is not sufficient here because Table 4 of Merck-086 shows that when all 14 serotypes (plus serotype 33F) were combined in a single formulation, as in claim 46, a 2-log increase was *not* achieved across all serotypes in the composition. The data in Table 4 thus provides clear evidence that the claimed 2-log increase across all serotypes would *not* have been obvious, notwithstanding the immunogenicity data in Hausdorff that Sanofi relies upon.

In response, Sanofi asserts that the data in Hausdorff and Merck-086 supports a reasonable expectation of success because "obviousness does not require absolute predictability of success" (quoting the Board). Sanofi Br. at 59. But where the prior art contains evidence directly showing that others failed to achieve the claimed invention (as here), there can be no finding of obviousness. *See Univ. of Strathclyde*, 17 F.4th at 165-66 ("In this case, where the prior art evidences only failures to achieve that at which the inventors succeeded, no reasonable fact finder could find an expectation of success based on the teachings of that *same* prior art. The Board's finding is not supported by substantial evidence, and we therefore reverse its obviousness determination."). Sanofi's arguments on reply thus fail to overcome the Board's erroneous determination that the claimed composition would have been obvious over Hausdorff and Merck-086.

Sanofi also argues that the claimed 2-log increase could have been achieved by "routine optimization." Sanofi Br. 56-57, 59. However, Sanofi does not explain what routine optimization would have led to the claimed 2-log increase and why a skilled artisan would have been motivated to achieve a 2-log increase by any such "routine optimization." Sanofi cites to its expert, Dr. Van Alphen, and the Board's decision which quotes Dr. Van Alphen's assertion that "a 2-Log IgG Increase from baseline across all the serotypes can be achieved by routine optimization of test conditions, for example, the baseline (using different animals), the dose or adjuvant

amounts, and others." Appx350-351. But these statements provide no support for the conclusion that a skilled artisan would have been motivated to "optimize" test conditions so as to produce a 2-log increase above baseline in serum IgG levels, as claimed. Dr. Van Alphen further stated in his declaration that the baseline could be "routinely reduced by selecting germ-free animals that were never immunized or increased by selecting exposed animals already subjected to immunization." Appx351. Such unsupported allegations illustrate Sanofi's and the Board's hindsight-driven analysis of the proposed claims and should be rejected.

The PTO's brief fares no better. While the PTO does include Table 4 in its brief, with particular rows highlighted to indicate which serotypes achieved the claimed 2-log increase, the PTO ultimately fails to explain how the data in Table 4 could support a finding of obviousness and thus, like Sanofi, does not overcome the Board's erroneous conclusions and analysis.

The PTO acknowledges that "Table 4 does not discloses a greater than 100-fold (2-log) increase in immunogenicity across all non-Prevnar serotypes in each of the rabbit studies" (PTO Br. at 52), but, like Sanofi, focuses on the data for serotype 22F in isolation (which, as noted above, provides a 2-log increase in only 2 of the 4 study arms). The PTO concludes that the Board "simply found that these data do not overwhelm the reasonable expectation of success provided by Hausdorff and the other teachings in Merck 2011," quoting the Board's statement that "obviousness

does not require absolutely predictability of success." PTO Br. at 55. This argument falls short given the undisputed evidence in Table 4 that the claimed 2-log increase was not achieved across all serotypes in any of the four study arms reported therein. *See Univ. of Strathclyde*, 17 F.4th at 165 (finding that where there is not only a "complete lack of evidence in the record" that the claimed subject matter was shown in the prior art, but "also evidence showing that others had *failed"* to achieve the claimed invention despite attempting to do so, "such failures undermine a finding of a reasonable expectation of success.").

Both Sanofi and the PTO devote a significant portion of their respective briefs to the issue of immune interference. The PTO, for example, goes to great lengths to defend the Board's reliance on certain portions of the Skinner reference to support its conclusion on lack of interference. PTO Br. at 55-57. However, as discussed above, and as Pfizer argued in its opening brief, the Board's finding on this issue is ultimately wrong and beside the point because Table 4 of Merck 2011 (and *Figure 4* of Skinner, which the PTO does not address) shows that when Merck actually attempted to achieve the claimed 2-log increase in NZWR for PCV-15, it failed to show such an increase across *all* serotypes in the composition. Such evidence demonstrates that immune interference is an issue, is unpredictable, and is dispositive as to whether claim 46 would have been obvious. The Court need not go any further in its analysis.

For claims 48 and 49, both Sanofi and the PTO argue that because the Board found claims 3 and 4 obvious, claims 48 and 49 necessarily are invalid as well. This entirely ignores the fact that claims 48 and 49, in addition to requiring the additional serotype conjugates of claims 3 and 4, also require a *2-log increase* for each of these additional serotypes (in addition to the 14 serotypes recited in the claim 46). The Board was required to address these additional claim limitations in its analysis, notwithstanding its finding that claims 3 and 4 would have been obvious. Here, there was no evidence in the prior art showing a 2-log increase for *any* of the additional serotypes recited in claims 48 and 49. This fact is not in dispute. Thus, even if the Board properly concluded that claims 3 and 4 are obvious (they are not), such a finding does not support its conclusion that claims 48 and 49 are unpatentable.

Sanofi's assertion that Pfizer waived any argument regarding the Board's failure to provide an analysis of claims 48 and 49 lacks merit. Pfizer requested Director review of the Board's decision in each IPR proceeding, including the Board's denial of Pfizer's motion to amend. Under these circumstances, Sanofi cannot credibly argue that Pfizer waived its right to challenge the Board's decisions on appeal. The Board's failure to address claims 48 and 49 is egregious and cannot stand.

Pfizer's motion to amend presented substitute claims that were independently patentable over the prior art. Neither Sanofi nor the PTO disputes that the claimed

2-log increase was not achieved when others attempted to expand vaccine coverage to include the serotypes recited in the claim. The Court should reverse the Board's denial of Pfizer's substitute claims as an abuse of discretion and order the Board to enter Pfizer's motion to amend in the event that claim 1 is found unpatentable.

## IV. THE PTO'S DIRECTOR REVIEW PROCEDURE WAS IMPROPER

The Director review process implicates substantive rights, and therefore required notice-and-comment rulemaking, contrary to arguments from the PTO and Sanofi. *Arthrex* mandated substantive and procedural review, and the PTO's failure to conduct rule-making should void the Director review decisions in these proceedings. "It is well-established that an agency may not escape the notice and comment requirements . . . by labeling a major substantive legal addition to a rule a mere interpretation." *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1024 (D.C. Cir. 2000). None of the cited authorities from the PTO and Sanofi address whether PTO rules are substantive or procedural. Nor does the PTO dispute the facts that the Director review process has changed repeatedly without prior notice, and is now subject to a formal notice-and-comment procedure.

Here, the PTO continues to change the standards for the review process, despite a pending Request for Comments, and without prior notice to the public. Director Vidal has updated the "interim process" that further purports to establish substantive rules. For example, the PTO chose the standard of review (de novo) that

the Director applies. *See* https://www.uspto.gov/patents/patent-trial-and-appeal-board/interim-process-director-review (item 9). The PTO also posted online "suggestions by the Director" explaining the substantive issues that the Director will consider: "Issues that may warrant review by the Director include issues that involve an intervening change in the law or USPTO procedures or guidance; material errors of fact or law; matters that the PTAB misapprehended or overlooked; novel issues of law or policy; issues on which PTAB panel decisions are split; issues of particular importance to the Office or patent community; or inconsistencies with Office procedures, guidance, or decisions." *Id.* (item 10). These rules are therefore not merely "the procedural requirements for seeking Director review" as the PTO contends (PTO Br. at 59), and warrant a formal process that has yet to occur.

## CONCLUSION

Pfizer respectfully requests that this Court reverse the Board's final written decisions and hold that the original and proposed substitute claims are patentable, or alternatively vacate and remand for further proceedings.

January 31, 2023

Respectfully submitted,

/s/ *John Scheibeler*
John Scheibeler
Dimitrios T. Drivas
Amit Thakore
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200 (telephone)
jscheibeler@whitecase.com
athakore@whitecase.com

Henry Huang
WHITE & CASE LLP
3000 El Camino Real
Two Palo Alto Square, Suite 900
Palo Alto, CA 94306
(650) 213-0300 (telephone)
henry.huang@whitecase.com

C. Sebastian Zonte
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433
(213) 620-7798 (telephone)
sebastian.zonte@whitecase.com

*Counsel for Appellant Pfizer Inc.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32.

_X_ The brief contains 6,891 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b), or

____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

_X_ The brief has been prepared in a proportionally spaced typeface using Microsoft Word in a 14 point Times New Roman font or

____ The brief has been prepared in a monospaced typeface using ________ _______in a ____characters per inch font.

Dated: January 31, 2023

/s/ *John Scheibeler*
*Attorney for Appellant Pfizer Inc.*